IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STERLING AFFILIATES, LTD. | § | CASE NO. 02-37578-H4-11 |
| | § | |
| | § | (CHAPTER 11) |
| Debtor | § | |

### DEBTOR'S OBJECTION TO CLAIMS OF NICK WALKER, WILLIAM BECKER, AND WILLIAM SCOTT (Claim # 145, 146, 147)

---

**NOTICE**

**PLEASE TAKE NOTICE THAT A HEARING WILL BE CONDUCTED ON THIS MATTER ON November 13, 2002 AT 3:00 P.M. IN COURTROOM 403, 4TH FLOOR, HOUSTON, TEXAS. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.**

**YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT PRIOR TO THE HEARING. YOU MUST GIVE A COPY OF YOUR RESPONSE TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Sterling Affiliates, Ltd. ("Sterling" or "Debtor"), and files this objection to the Claims of Nick Walker, William Becker, and William Scott in the total amount of $464,820.62, showing unto the court as follows:

### FACTUAL BACKGROUND

1. The Debtor filed a petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division, on July 9, 2002.

2. The bar date for filing claims was September 16, 2002.

3. Nick Walker filed a proof of claim as claim #146.

4. William Scott filed a proof of claim as claim #145.

5. William Becker filed a proof of claim as claim #147.

6. All three claimants filed an application for payment of administrative expenses as docket #151 in the main case.

## GENERAL OBJECTION TO CLAIM

7. The claims are not supported by sufficient documentation. They were filed in bad faith. They were filed as secured or priority, but are not secured, and they exceed the $4,650.00 priority claim ceiling. They also improperly include attorney's fees.

8. Finally, the Debtor does not owe the Claimants the amounts claimed.

## OBJECTION - NO OBLIGATION OWED

9. <u>Nick Walker's Claim is not based on a Binding Contract</u>. Nick Walker has filed a claim based on a document signed by him and the President of a corporation called "Sterling Steel Group, Inc."[1] ("Sterling Inc."). The contract was conspicuously not signed by the Chairman of the Board of Sterling, and there is no evidence the Board of Directors ever approved the document. Executive employment contracts require board of directors approval because they are not ordinary course transactions. *Templeton v. Nocome Hills* 555 S.W.2d 534, 538 (Tex. App.–Texarkana 1977, no writ)

> [T]he settled rule in Texas is that a corporation president, merely by virtue of his office, has no inherent power to bind the corporation except as to routine matters arising in the ordinary

---

[1] The Debtor is Sterling Affiliates, Ltd., a limited partnership that is, in most respects, the successor to the Sterling Steel Group, Inc.

course of business. . . . The execution of an employment contract binding the corporation to employ a person in a managerial position for a period of one year could not be considered a matter in the ordinary and usual course of appellee's business.").

Id.

10. The five-year executive employment contract is clearly not within the ordinary scope steel tower manufacturing. Board of director approval was required, but not given.

11. Mr. Walker's employment contract was terminated in October 2001. He continued on as an at-will employee. Mr. Walker was fired as an at-well employee in June 2002, before the bankruptcy.

12. <u>William Becker</u>. William Becker is, upon information and belief, Nick Walker's son-in-law. Nick Walker, then acting as Executive Vice President, hired Mr. Becker and purported to bind Sterling Inc. to Mr. Becker's very favorable employment contract. Of course, the employment contract was a windfall for Mr. Becker. This contract is a thinly veiled pretext to divert corporate assets. It is unenforceable because it was intended by both parties as the instrumentality of a breach of fiduciary duty.

13. The Debtor fired Mr. Becker before the bankruptcy.

14. <u>William Scott</u>. As a favor to Mr. Scott, Nick Walker signed a contract identical to that signed by Mr. Becker – giving Mr. Scott the identical windfall. Mr. Scott was also fired before the bankruptcy.

## OBJECTION - PREPETITION UNSECURED CLAIM

15. The debtor denies that the employment contracts held by Walker, Becker and Scott are binding agreements sufficient to create a claim against the Debtor. However, to the extent that any of the contracts are valid, the claimants hold mere unsecured nonpriority claims.

16.     The Contract with Nick Walker was terminated October 24, 2001, but he continued as an "at will" employee until June 14, 2002.

17.     Mr. Walker's working at SAL after his contract was terminated demonstrates that he intended to waive a breach of his employment agreement.

18.     Mr. Walker is not entitled to any deferred income. The original contract dated April 23, 1999 does not contain any provision for deferred income. An Appendix dated June 21, 1999, provides for a $120,000 bonus payable 90 days after the conclusion of the audit of the companies books. To date, there has been no audit. Therefore, a condition precedent to the payment has not been satisfied.

**CLAIMANTS' "EMPLOYMENT AGREEMENTS" HAD ALREADY TERMINATED**

19.     <u>Claimants mis-construed the Sale Agreement</u>. Taking one sentence of the 16 page sale agreement out of context, the Claimants claim that they are entitled to be paid because the Debtor "will terminate all employment agreements (which termination shall include the payment of all amounts owed by seller to employees). . . ."

20.     The quoted language does not apply to Claimants because, <u>as of the effective date of the contract, none of Claimants held employment agreements</u>. Their "employment agreements" were "terminated" before the sale. To the extent that they once had contracts, Claimants now hold prepetition breach of contract claims. Specifically, Nick Walker's "agreement" was terminated October of 2001, and all claimants were fired on June 14, 2002 - before the bankruptcy.

**CLAIMANTS HAVE MERE PREPETITION CLAIMS, IF ANY**

21.     <u>Claimants seek to Elevate Unsecured Prepetition Claims</u>. The Claimants filed a motion to pay their claims as administrative expenses. The Debtor's response (attached as Exhibit

"A") describes, in further detail, why Claimants do not hold an administrative expense claim.

22.     Under applicable case law, prepetition claims cannot be elevated to the status of an administrative expense. *In re Oxford Management, Inc.*, 4 F.3d 1329, 1333-34 (5th Cir. 1993). The *Oxford* doctrine is explicit - unsecured creditors cannot be paid as administrative claimants even when their work actually benefits the Estate. In *Oxford* a broker obtained a buyer for Estate property based on a prepetition contract. The Fifth Circuit held that one cannot "elevate" the prepetition claimant to administrative expense status.

23.     Like the broker in *Oxford*, the Claimants' claim is based on prepetition contracts for compensation. This Court should not allow one class of unsecured creditors to advance their interests above the interests of all other creditors.

## **ALLEGED ORAL BONUSES ARE PREPETITION CLAIMS AND NOT BINDING**

24.     Nick Walker lists "Bonus per Dieter" as a commission owed. Mr. Walker believes his is owed the commission because he brought the purchaser of the Arrow Division to the attention of Dieter Scherfenberg.

25.     Sterling allegedly agreed to pay Mr. Walker a commission of $50,000 on condition that the Arrow Division was sold for $5 million.

26.     However, since the Arrow Division sold for only $2.7 million, no commission is due.

27.     Further, the bonus would be subsumed into Mr. Walker's contract. The contract contains anti-amendment, ant-waiver, and merger clauses. The contract itself prohibits the alleged bonuses.

28.     The Statute of Frauds prevents oral bonuses for bonuses based on an employment

L:\ste031\00010\HMRI0500.WPD

contract with a stated term of five years. A promised bonus would have to be in writing and signed by the Debtor. As stated earlier, it also requires the consent of the board of directors.

29. This alleged commission would have accrued, if at all, pre-bankruptcy and is, at best, a general unsecured claim. The commission is simply not owed.

### "DELINQUENT EXPENSES" ARE PREPETITION AND UNDOCUMENTED

30. Nick Walker claims prepetition employee expenses as an administrative claim. He has provided no documentation with respect to this claim.

31. Clearly, these expenses are mere unsecured prepetition obligations, if they are verified and legitimate employee expenses, not deducted by Mr. Walker as unreimbursed business expenses.

### "DISCONTINUED BENEFITS" CLAIM UNCLEAR

32. Nick Walker wants $13,500 for "Contract benefits- Discontinued" but does not elaborate. The "benefits" it appears, are ancillary to the alleged employment agreement and arose prepetition. They are not administrative expenses. They are not even owed. Unless otherwise required by law, an employer does not have to provide benefits after the employment terminates.

### CLAIM FOR "DIFFERENCE BETWEEN ANTICIPATED OFFER"

33. Nick Walker demands exactly $100,000 from the Debtor for reasons that, frankly, are less than clear. His entire statement of the claim is "Difference between existing contract and anticipated offer with no employment contract."

34. Perhaps Mr. Walker is stating a loss of opportunity to engage in a higher paid position. If so, the claim is not an administrative expense. If the claim is a measure of damages for breach of the alleged prepetition contract, then the claim is not an administrative expense.

L:\ste031\00010\HMRI0500.WPD

35. Likewise, Mr. Scott claims $45,900 in damages for "Difference between existing contract and anticipated offer with no employment contract or ownership." This claim is likewise unclear. To the extent it is a measure of damage for breach of a prepetition contract, it is not an administrative expense.

WHEREFORE, the Debtor prays that Claimants' claims be denied in their entirety, and the Court grant such other and further relief as is just and proper.

Dated the 1st day of October, 2002.

        Respectfully submitted,

        WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

        By: _*Hugh M. Ray, III*_
            EDWARD L. ROTHBERG
            State Bar No. 17313990
            HUGH M. RAY, III
            State Bar No. 24004246, Fed I.D. 22090
            MELISSA A. HASELDEN
            State Bar No. 00794778
            Eleven Greenway Plaza, Suite 1400
            Houston, Texas 77046
            Telephone: (713) 961-9045
            Facsimile:  (713) 961-5341

        ATTORNEYS FOR DEBTOR

## Certificate of Service

     I certify that a true and correct copy of the foregoing was forwarded to the parties on the service list attached via email or first class mail on this the 1st day of October, 2002.

                                        _____*Hugh M. Ray, III*_____
                                        HUGH M. RAY, III